JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

In re

SAWTELLE PARTNERS, LLC,

       Debtor,

SATELLITE CAPITAL, LLC,

       Appellant,

     v.

EMACIATION CAPITAL, LLC, et al.,

       Appellees.

Case No.: CV 18-07461-CJC

Bankruptcy Case No.: BK 16-21234-BR

**ORDER AFFIRMING IN PART AND REVERSING IN PART THE BANKRUPTCY COURT'S JULY 12 DISMISSAL ORDER AND REMANDING CASE TO BANKRUPTCY COURT**

# I. INTRODUCTION

This appeal arises out of the bankruptcy of Sawtelle Partners, LLC ("Sawtelle" or "Debtor"). During bankruptcy proceedings, Appellant Satellite Capital, LLC ("Satellite") filed an adversary action in California Superior Court against Appellee Emaciation Capital, LLC ("Emaciation"). Satellite sought to quiet title on a property originally owned by Debtor and transferred to Emaciation. Emaciation removed to Bankruptcy Court. The Bankruptcy Court issued orders (1) denying Satellite's motion to remand, (2) expunging a related *lis pendens*, (3) dismissing Satellite's quiet title action for failure to state a claim, and (4) granting attorneys' fees.

Before the Court is Satellite's appeal of these four orders. For the following reasons, the Court **AFFIRMS IN PART** and **REVERSES IN PART** the Bankruptcy Court orders and **REMANDS** the action to the Bankruptcy Court.

## II. BACKGROUND

### A.    Bankruptcy Proceedings

Most of the relevant facts on appeal are not disputed. On August 23, 2016, Sawtelle filed a petition for relief under Chapter 11 of the Bankruptcy Code.[1] (Dkt. 25 [Appellant Satellite's Opening Brief, hereinafter "App. Br."] at 5.) In its petition, Sawtelle listed an office building at 1850 Sawtelle Boulevard in Los Angeles, California ("the Property") as its primary asset. (*Id.*) The Property was headquarters for Sawtelle's non-debtor affiliate Starving Students, Inc., a California-based moving company ("Starving Students"). Non-debtor Ethan Margalith owns and controls both entities as

---

[1] The case was later converted to a Chapter 7 bankruptcy.

the sole shareholder of Starving Students and the sole member of Sawtelle. (Dkt. Nos. 26-1–26-77 [Excerpts of Record on Appeal, hereinafter "ER"] at 1239.) Sawtelle estimated the value of the Property at $9,000,000. (Dkt. 27 [Appellee Emaciation's Opening Brief, hereinafter "Em. Br."] at 6.) Sawtelle further represented that the Property was encumbered by $9,352,134.65 in liens. (*Id.*) The Bankruptcy Court appointed Peter J. Mastan ("the Trustee") as Chapter 11 trustee. (*Id.*)

In November 2016, Emaciation filed a secured proof of claim in the amount of $9,357,693.78 (the "Emaciation Claim"). (*Id.*) A few weeks later, Emaciation submitted an updated payoff statement claiming more than $10,800,000. (ER at 2173.) According to Emaciation's proof of claim, Sawtelle, Starving Students, and Margalith entered into an agreement with a third-party lender in November 2015 to loan $8,100,000 to Sawtelle and Starving Students and $200,000 to Margalith in exchange for two promissory notes. (*Id.* at 6–7.) The promissory notes were secured by a deed of trust on the Property (the "2015 Deed of Trust"). (*Id.* at 7.) Emaciation acquired the two secured promissory notes in October 2016. (*Id.*) At the time of Sawtelle's petition, there was also a second, junior deed of trust on the Property (the "Satellite Deed of Trust"). (App. Br. at 5.) It secured a debt of about $2,500,000. (*Id.*) Satellite acquired this claim, and corresponding rights under the junior lien, in August 2016. (*Id.*)

In June 2017, Emaciation moved for relief from the automatic stay under 11 U.S.C. §§ 362(d) to exercise its legal remedies under the 2015 Deed of Trust. (ER at 2274–500.) The Trustee subsequently filed an objection to Emaciation's proof of claim, which Satellite joined. (ER at 2167–2273.) The objection generally claimed that Emaciation's "blatantly bloated payoff amount" was a bad-faith strategy to prevent a Trustee sale of the Property and that Emaciation sought unenforceable interest rates and penalties. (*Id.* at 2167–88.) It also asserted a potential claim for fraudulent transfer. (*Id.* at 2186–88.)

The Trustee and Emaciation engaged in settlement discussions and ultimately reached a compromise.  (App. Br. at 6–7.)

Under the resulting agreement (the "Settlement Agreement"), the Debtor's estate would receive $108,000 from Emaciation to settle its fraudulent transfer claim, and the Trustee would withdraw his opposition to Emaciation's motion for relief from the automatic stay.  (ER at 1728–1836.)  It also provided that the Trustee would assign the estate's record and title interest to Emaciation by quitclaim deed "subject to any and all existing rights, liens, interests or claims."  (*Id.* at 1732.)  Finally, the Settlement Agreement provided that Emaciation's proof of claim would be "disallowed," and the Trustee and Emaciation agreed "to execute mutual releases."  (*Id.* at 1732–33.)  The recital states that the Trustee and Emaciation "desire to fully, finally and forever settle their disputes regarding the Sawtelle Property, including the Emaciation Lien and Objection to Claim, and release any and all claims that they may have, now or in the future, against each other relating in any way to the Bankruptcy Case, Emaciation Lien, Fraudulent Transfer Claim, and allegations contained in, or that could have been alleged in the Stay Relief Motion or Objection to Claim, except as specifically set forth in this Agreement."  (*Id.* at 1826.)  Satellite did not oppose, and the Bankruptcy Court approved the Settlement Agreement on September 7, 2017 (the "Settlement Order").  (*Id.* at 1655–57.)

The language of the Settlement Agreement, however, was apparently unclear.  Confusion followed.  A dispute arose over whether the Settlement Agreement extinguished the 2015 Deed of Trust and Emaciation's senior lien.  This appeal concerns the effect of the Settlement Agreement, the resulting actions of the parties and Bankruptcy Court, and a decision by the Ninth Circuit's Bankruptcy Appellate Panel.

Satellite interpreted the Settlement Agreement to extinguish Emaciation's senior lien on the Property and proceeded to take actions to clarify its interest in the Property. On October 4, 2017, Satellite filed a complaint in California Superior Court to quiet title (the "Complaint" and the "Quiet Title Action"). (*Id.* at 1226–76.) The Complaint states three causes of action claiming (1) Emaciation's lien is void under 11 U.S.C. § 506(d), (2) the Settlement Agreement extinguished the 2015 Deed of Trust, and, in the alternative, (3) seeking a judgment determining the amount required to redeem the Property. (*Id.*) Satellite also recorded a *lis pendens* on the Property. (*Id.* at 1265–66.) Emaciation removed the Quiet Title Action to Bankruptcy Court on November 17, 2017. (*Id.*) Satellite responded with a motion to remand. (*Id.* at 1118–32.)

After removing the case, Emaciation sought various forms of relief in Bankruptcy Court. First, Emaciation renewed its motion for relief from the automatic stay, seeking to foreclose on the Property. (Em. Br. at 11.) The Bankruptcy Court granted this motion on November 27, 2017. (*Id.*) Emaciation also filed a Federal Rule of Civil Procedure 60(b) motion to clarify or rescind the Settlement Order in the bankruptcy proceeding. (ER. at 1545–79.) It asked the Bankruptcy Court to resolve the dispute over the impact of Settlement Agreement on Emaciation's senior lien. (*Id.*) Finally, Emaciation filed a Rule 12(b)(6) motion to dismiss the Complaint in the Quiet Title Action. (*Id.* at 339–431.)

While the Rule 60(b) and Rule 12(b)(6) motions were pending, Emaciation proceeded with a foreclosure sale of the Property. (App. Br. at 10.) Satellite filed an application for a temporary restraining order seeking to enjoin the foreclosure sale. (*Id.*) The Bankruptcy Court denied the application. (*Id.*) On December 18, 2017, Emaciation foreclosed on the Property, with a final full credit bid of $12,978,172.09. (*Id.*) Emaciation itself submitted the winning bid and purchased property at the foreclosure sale. (ER at 906–08.) The Trustee's deed, reflecting the transfer of title to Emaciation, was recorded two days later. (Em. Br. at 11.)

The Bankruptcy Court then addressed the first of Emaciation's two pending motions.  On January 19, 2018, the Bankruptcy Court granted the Rule 60(b) motion and issued an order modifying the Settlement Agreement (the "Modification Order").  (ER at 1398–400.)  Specifically, it modified the Settlement Order based on "the understanding and intent of the Court" at the time of the Order "to clarify that Emaciation [] only released its claim against the estate, not its first priority lien against the [Property], and the waiver of any claim by Emaciation [] against the estate, as contemplated by the subject Compromise, is limited to any deficiency that may exist after foreclosure of the subject real property."  (*Id.*)  Satellite appealed the Modification Order to the Bankruptcy Appellate Panel for the Ninth Circuit.  (*Id.*)

There remained, however, the issue of Satellite's Quiet Title Action and *lis pendens* on the Property.  On March 28, 2018, after a series of hearings, the Bankruptcy Court granted Emaciation's motion to expunge the *lis pendens* on the Property (the "Expungement Order").  (*Id.* at 573–75.)  It found that Satellite failed to establish the probable validity of any of the three claims in its quiet title complaint.  (*Id.*)  One day later, the Bankruptcy Court denied Satellite's motion to remand the Quiet Title Action to Superior Court (the "Remand Order").  (*Id.* at 570–72.)[2]  In June 2018, Emaciation filed an amended motion to dismiss the quiet title Complaint.  (*Id.* at 339–431.)  In early July 2018, while this motion was pending, Emaciation sold the Property to a bona fide purchaser.  (Em. Br. at 12.)  On July 12, 2018, the Bankruptcy Court granted Emaciation's motion to dismiss (the "Dismissal Order").  (*Id.* at 8–10.)  Finally, in a separate order, the Bankruptcy Court granted Emaciation attorneys' fees incurred in expunging the *lis pendens* (the "Attorneys' Fees Order").  (*Id.* at 19–22.)

---

[2] The Bankruptcy Court also denied Satellite's various motions to reconsider or modify the Expungement Order and to record a new *lis pendens*.  (ER at Exs. 22–23)

The Bankruptcy Appellate Panel reversed the Modification Order on July 1, 2019. (Dkt. 21, Ex. A [*In re Sawtelle Partners, LLC*, BAP No. CC-18-1032-TaLS (9th Cir. July 1, 2019), hereinafter "BAP"].) It held that the Bankruptcy Court erred in granting Emaciation's motion for reconsideration because it failed to identify an applicable legal standard. (BAP at 12–17.) It also held that Emaciation was not entitled to relief under Rule 60(b)(1), finding that, if the Settlement Agreement extinguished Emaciation's lien, this was not due to a "mistake" or "surprise" that could justify relief under Rule 60(b). (*Id.* at 17–20.) The Panel found that the dispute over how to interpret the Settlement Agreement should have been addressed in an adversary proceeding, not in a motion for reconsideration. (*Id.* at 27.) The decision emphatically did not "decide the merits of the underlying dispute: how to interpret the Settlement Agreement." (*Id.*) The Panel explained, "to the extent the Settlement Agreement is properly interpreted as Emaciation requests in the quiet title action, any error in the bankruptcy court's decision on reconsideration would be harmless." (*Id.*) Emaciation has appealed the Panel's decision to the Ninth Circuit. (*See* Dkt. 21.)

Before the Court is Satellite's timely appeal of the Dismissal Order and the Attorneys' Fees Order. (ER at 1–7, 11–18.) The Court initially stayed this appeal pending the Bankruptcy Appellate Panel's adjudication of the appeal of the Modification Order. (Dkt. 11.) After the Panel's ruling, the Court lifted the stay. (Dkt. 24.) The Court also denied Emaciation's motion to dismiss the instant appeal as moot. (Dkt. 23)

## III. LEGAL STANDARD

A district court has jurisdiction to hear appeals from final judgments of the bankruptcy courts. 28 U.S.C. § 158(a)(1); *see also Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787 (9th Cir. 2003). In appeals from final judgments, a district court must review a bankruptcy court's legal

conclusions and issues of statutory construction, including the bankruptcy court's interpretation of the Bankruptcy Code, de novo. *Neilson v. United States (In re Olshan)*, 356 F.3d 1078, 1083 (9th Cir. 2004). Jurisdictional issues in bankruptcy are also reviewed de novo. *See In re Wiersma*, 483 F.3d 933, 938 (9th Cir. 2007). Factual determinations are reviewed for clear error. *Neilson*, 356 F.3d at 1083. Orders granting or denying remand on equitable grounds and orders expunging a *lis pendens* are reviewed for abuse of discretion. *In re Miles*, 294 B.R. 756, 759 (B.A.P. 9th Cir. 2003) (remand); *Weston v. Rodriguez*, 110 B.R. 452, 460 (E.D. Cal. 1989) aff'd, 967 F.2d 596 (9th Cir. 1992) (unpublished table decision) (*lis pendens*).

## IV.  DISCUSSION

### A.     Subject Matter Jurisdiction

Satellite argues that the Bankruptcy Court lacked jurisdiction to adjudicate the Quiet Title Action and therefore its orders must be vacated. District courts have original jurisdiction over "all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157, this Court refers these proceedings to the Central District's Bankruptcy Court. "[C]laims that arise under or in Title 11 are deemed to be 'core' proceedings, while claims that are related to Title 11 are 'noncore' proceedings." *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1435 (9th Cir. 1995). Absent the parties' consent, a bankruptcy court does not have authority to enter final judgments in non-core proceedings. 28 U.S.C. § 157(c)(1); *see Hopkins v. Plant Insulation Co.*, 349 B.R. 805, 810 (N.D. Cal. 2006). Instead, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court," and the district court enters a final order or judgment after de novo review of "matters to which any party has timely and specifically objected." 28 U.S.C. §

157(c)(1). A bankruptcy court must decide whether a proceeding is "core" to determine the proper posture of its decisions. *See id.*

### i. Core Proceedings

Civil proceedings are "core" if they "arise under" or "arise in" Title 11 cases. 28 U.S.C. § 1334(b). "A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." *In re Ray*, 624 F.3d 1124, 1131 (9th Cir. 2010). "A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code." *Id.* The statute setting out this definition offers a non-exhaustive list of core proceedings. 28 U.S.C. § 157(b)(2). The list includes matters affecting the administration of the estate, determinations of the validity, extent, or priority of liens, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(A), (K), (O).

In the instant case, the Bankruptcy Court entered a final order dismissing the Complaint, so it necessarily determined that the Quiet Title Action was a core proceeding. (*See* ER at 9–10.) The Court affirms that decision. First, Satellite's claims against Emaciation are "determined by a statutory provision of the Bankruptcy Code," specifically 11 U.S.C. § 506(d).[3] *See In re Ray*, 624 F.3d at 1131. The Complaint is explicit on this point. Satellite references Section 506(d) in the title of its first cause of

---

[3] As relevant here, 11 U.S.C. § 506(d) provides that a lien securing a claim against a debtor is void unless it is "an allowed secured claim."

action.  (ER at 1242.)[4]  This claim alleges that the 2015 Deed of Trust "is void pursuant to 11 U.S.C. § 506(d)" because it is not an allowed secured claim within the meaning of that statute.  (*Id.*)  Put simply, Satellite uses a state law procedure to seek relief based on a provision of the Bankruptcy Code as applied to a bankruptcy settlement agreement.  Such a claim arises under Title 11, and the Bankruptcy Court properly determined that it was a core proceeding.  *See In re Ray*, 624 F.3d at 1131.

The Bankruptcy Court also properly determined that the Quiet Title Action arises under Title 11 and in a Title 11 proceeding because the Action implicated its ability to effectuate the Settlement Order and administer the Sawtelle estate.  (ER at 642–43.)

> "Congress' grants of jurisdiction under sections 1334 and 157 conferred upon bankruptcy courts that jurisdiction needed to implement effectively its function of administering the Bankruptcy Code.  Simply put, bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner.  Requests for bankruptcy courts to construe their own orders must be considered to arise under Title 11 if the policies underlying the Code are to be effectively implemented."

*In re Franklin*, 802 F.2d 324, 326 (9th Cir. 1986) (citations omitted).  Satellite's first cause of action alleges that the Senior Lien was "released and disallowed pursuant to the Settlement Agreement."  (ER at 1242.)  The second cause of action asserts the same basis for relief.  (*Id.* at 1243 ["Pursuant to the Settlement Agreement, all obligations of Sawtelle Partners secured by the [2015 Deed of Trust] were disallowed, released, and extinguished."].)  Both claims necessarily depend on the respective rights of the Trustee, Sawtelle, Emaciation, and Satellite under the Settlement Order.

---

[4] "Action to Quiet Title Pursuant to California Code of Civil Procedure § 760.020 – Void Lien Pursuant to 11 U.S.C. § 506(d)."  (ER at 1242.)

The Bankruptcy Court determined that the Quiet Title Action might disrupt the transfer of the Property as authorized by the Settlement Order. As such, it correctly determined that the outcome of this dispute would "impact[] the handling and administration of the bankrupt estate." *See In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988). The Settlement Agreement also specifically reserved the Bankruptcy Court's continuing jurisdiction over the Agreement "until final performance," including "appropriate proceedings to enforce this Agreement." (ER at 1832.) While the Bankruptcy Appellate Panel found that the Bankruptcy Court lacked authority to *modify* the Settlement Agreement, it did not find that the Bankruptcy Court lacked authority to *interpret* that Agreement. (*See* BAP at 27.) Indeed, it implied that this is exactly what the Bankruptcy Court should have done. (*See id.* [decision on how the Settlement Agreement affected Emaciation's lien "should be made in the adversary proceeding"].)[5]

Satellite claims that in exercising jurisdiction over the Quiet Title Action the Bankruptcy Court went beyond the limits of its authority to interpret or implement the Settlement Order. A bankruptcy generally cannot exercise jurisdiction "to determine the claims of title of certain third parties to certain property held adversely to the trustee simply because resolution of those ownership claims would affect the rights of the third parties to recovery against the estate as creditors." *Matter of Fed. Shopping Way, Inc.*, 717 F.2d 1264, 1274 (9th Cir. 1983) (internal quotations omitted). Satellite argues that this rule applies in this case. The Court disagrees.

While the Quiet Title Action does implicate Satellite and Emaciation's ability to recover against the Sawtelle estate, that was not the sole basis for the Bankruptcy Court's

---

[5] Satellite argues that because the Settlement Order did not *expressly* reserve jurisdiction, the Bankruptcy Court forfeited its authority to interpret the Agreement. This argument fails. The Bankruptcy Court properly exercised jurisdiction based in part on its statutory authority to administer bankruptcy proceedings. *See Franklin*, 802 F.2d at 326. The Court finds that it was not obligated to expressly incorporate the Agreement's jurisdictional language to adjudicate this dispute.

jurisdiction.  *Cf. id.* at 1274.  The Bankruptcy Court exercised jurisdiction because Satellite challenged the continued existence of Emaciation's secured claim, which implicated the Bankruptcy Court's authority in the Title 11 proceedings.  (*See* ER at 631–32.)  Unlike in the cases cited by Satellite, the Bankruptcy Court was in the midst of administering Sawtelle's estate when this adversary proceeding was removed.  It had not dismissed the Chapter 11 proceeding, had not heard or approved a reorganization plan, had not approved the sale of any estate property, and had not lifted or granted relief from the automatic stay.  (*Cf. Fed. Shopping Way, Inc.*, 717 F.2d 1264 (court lacked jurisdiction to enforce settlement agreement after approving property sale); *In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 547 (9th Cir. 2006) (court lacked jurisdiction to enforce settlement agreement after it had dismissed bankruptcy proceedings); *see also Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998) (subject matter jurisdiction determined at the time of removal).  The procedural posture here is more analogous to *In re Franklin*, where the Ninth Circuit found that a bankruptcy court had arising under jurisdiction to interpret a settlement agreement because "the issue the plaintiffs attempted to bring in state court was the effect of the [settlement agreement] on the automatic stay provision, a fundamental aspect of the Bankruptcy Code."  624 F.3d at 1132; *see also In re Nemko, Inc.*, 136 B.R. 334 (Bkrtcy. E.D.N.Y. 1992), *aff'd in part, remanded in part on other grounds* 202 B.R. 673.  Here, the Quiet Title Action addressed the effect of the settlement on a transfer of estate property, and the Bankruptcy Court properly exercised arising under jurisdiction.

Satellite argues that the estate could never have been affected by the Quiet Title Action because the Settlement Agreement insulated the estate from Emaciation's claims. This assumes too much.  First, Emaciation contends that the Agreement was never consummated because the Trustee never delivered the quitclaim deed. (Em. Br. at 11.)  It also generally argues that the Settlement Agreement released claims against the estate contingent on Emaciation's authority to foreclosure on the 2015 Deed of Trust.  (*See*

-12-

*generally id.*)  Finally, Emaciation points to language in the Settlement Agreement providing that "this Agreement shall not prejudice or otherwise have any effect on the rights of junior lienholders . . . and . . . may not be used by non-parties . . . in other forums for any reasons."  (ER at 1828.)  Regardless of the merits of Emaciation's position, Satellite improperly assumes disputed questions of law and fact.

The Court concludes that the Bankruptcy Court had jurisdiction over the first and second causes of action in the adversary proceedings because they arose under the Bankruptcy Code and in a bankruptcy proceeding.  These claims affected the administration of the Sawtelle estate, involved determinations of the validity, extent, or priority of liens, and affected the liquidation of the assets of the estate and the adjustment of debtor-creditor relationships.  *See* 28 U.S.C. § 157(b)(2)(A), (K), (O).

### ii.    Supplemental Jurisdiction

Satellite argues that even if the Bankruptcy Court properly exercised jurisdiction over the first and second claims, it lacked jurisdiction over the third cause of action.  In the Ninth Circuit, a bankruptcy court has supplemental jurisdiction over claims that "are so related to claims in the action within [the District Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 869 (9th Cir. 2005) (quoting 28 U.S.C. § 1367).  "A state law claim is part of the same case or controversy when it shares a common nucleus of operative fact with the federal claims and the state and federal claims would normally be tried together."  *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) (internal quotations omitted).  A court *may* decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims

over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

The Bankruptcy Court properly exercised supplemental jurisdiction over the third cause of action in the Quiet Title Action. As explained above, the Bankruptcy Court has original jurisdiction over the first and second causes of action under 28 U.S.C. §§ 157 and 1334(b). The third cause of action "shares a common nucleus of operative fact" and ordinarily would be tried in the same proceeding. *See Bahrampour*, 356 F.3d at 978. Specifically, all three claims involve encumbrances on the Property and the rights and obligations of Satellite and Emaciation under their respective deeds of trust. The third cause of action does not raise any novel or complex issues of California law. *See* 28 U.S.C. § 1367(c)(1). The first and second causes of action are Satellite's primary claims and predominate over the third cause of action. (*See* ER at 1243–46; 28 U.S.C. § 1367(c)(2).) Finally, there are no other compelling reasons to decline jurisdiction. *See* 28 U.S.C. § 1367(c)(4).[6] Accordingly, the Bankruptcy Court properly exercised jurisdiction over all three claims in the Quiet Title Action.

## B.    Motion to Remand

Satellite argues that the Bankruptcy Court improperly denied its motion to remand. Under 28 U.S.C. § 1452(b), a Bankruptcy Court may remand claims arising under Title 11 on "any equitable grounds."[7] In the Ninth Circuit, courts consider up to fourteen factors in determining whether to remand on equitable grounds. *Fed. Home Loan Bank of Chi. v. Banc of Am. Sec. LLC*, 448 B.R. 517, 525 (C.D. Cal. 2011). These factors include "(1) effect or lack thereof on the efficient administration of the estate if the Court

---

[6] Because the Bankruptcy Court dismissed all three claims at once, 28 U.S.C. 1367(c)(3) is inapplicable.
[7] Because the Court determines that the Bankruptcy Court had subject matter jurisdiction, the Bankruptcy Court was not required to remand for lack of jurisdiction.

recommends [remand or] abstention; (2) extent to which state law issues predominate over bankruptcy issues; (3) difficult or unsettled nature of applicable law; (4) presence of related proceeding commenced in state court or other nonbankruptcy proceeding; (5) jurisdictional basis, if any, other than § 1334; (6) degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of nondebtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action." *Id.*

Based on these factors, the Bankruptcy Court's decision not to remand was not an abuse of discretion. *See In re Miles*, 294 B.R. at 763. The Quiet Title Action asserted claims based on Title 11 and required interpretation of the Bankruptcy Court's previous orders. As explained above, it also implicated the administration of the bankruptcy estate. Indeed, Emaciation filed a sperate action to rescind the Settlement Agreement while the motion to remand was pending. Moreover, the Bankruptcy Court may have determined that remand would cause undue prejudice for Emaciation. Ultimately, the Bankruptcy Court could have reasonably concluded that "the federal interest in assuring fair and equitable administration of the bankruptcy system and policing abuses [] predominates over any arguable state interest." *See id.*

Satellite argues that the Bankruptcy Court should have granted the motion to remand based on the principles of mandatory abstention set out in 28 U.S.C. § 1334(c)(2). Although, as Satellite admits, mandatory abstention does not apply to a removed proceeding in bankruptcy court, some courts have nevertheless suggested that

remand is proper where all elements of mandatory abstention are satisfied. *See Bally Total Fitness Corp. v. Contra Costa Retail Ctr.*, 384 B.R. 566, 570 (Bankr. N.D. Cal. 2008). Regardless of whether this approach is correct, the elements of mandatory abstention are not satisfied here. As discussed above, the Court finds that the Quiet Title Action involved claims "arising under Title 11 or arising in a case under Title 11," which makes it ineligible for mandatory abstention. *See id.*; 28 U.S.C. § 1334(c)(2). Accordingly, the Bankruptcy Court's Remand Order is **AFFIRMED.**

### C. Motion to Dismiss

Having determined that the Bankruptcy Court properly exercised jurisdiction over the Quiet Title Action, the Court now turns to the merits of its Dismissal Order. The Court addresses the dismissal of the first and second causes of action first.

### ii. Claims One and Two

Satellite's first and second claims sought relief based on the theory that the Settlement Agreement extinguished Emaciation's lien. The Bankruptcy Court dismissed these claims under Rule 12(b)(6). (ER at 10.) The Dismissal Order does not set out the Bankruptcy Court's reasoning and conclusions but asserts that Emaciation's motion was granted "for the reasons stated by the Court, as reflected on the record of the hearing." (*Id.*) At the relevant hearing, the Bankruptcy Court explained that the Modification Order "took care of the first two [causes of action] . . . subject to an appeal." (*Id.* at 196.) It did not provide any alternative basis for this decision and declined to address how it would rule absent the Modification Order. (*Id.* at 196, 202–04 ["[A]s the record stands, [claims] one and two are not viable and that's it. I'm not going to say anything more because that's clear."].)

Because the Bankruptcy Court erred in issuing the Modification Order, it also erred in relying on that Order to dismiss the first and second causes of action. (*See generally* BAP.) The record is insufficient for this Court to determine whether this was harmless error. (*See id.* at 26–27.) Although the Court reviews questions of law de novo, it lacks authority to decide factual issues not addressed by the bankruptcy court. *See In re Carinalli*, 2010 WL 4226730, at *4 n.6 (N.D. Cal. Oct. 21, 2010). Similarly, it may abuse its authority by considering legal arguments not advanced to the Bankruptcy Court. *See In re H.B. Leasing Co.*, 188 B.R. 810, 814 (E.D. Tex. 1995). With the Modification Order reversed, Emaciation's primary argument is that the senior lien survived the Settlement Agreement because the 2015 Deed of Trust separately secured the debt of Starving Students. The Bankruptcy Court has not yet addressed the facts underlying this argument. For example, Emaciation contends that the terms of the agreement creating the 2015 Deed of Trust include an anti-affiliation representation. (*See* Em. Brief at 27.) Although Emaciation's motion to dismiss tests the legal sufficiency of the Complaint, the Bankruptcy Court may still address facts presented in judicially noticeable materials. *See Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). At this stage, the Court declines to resolve legal and factual issues properly adjudicated by the Bankruptcy Court.

The Court therefore **REVERSES** the Bankruptcy Court's dismissal of the first and second causes of action and **REMANDS** to the Bankruptcy Court to adjudicate the Motion to Dismiss based on the original Settlement Agreement and Settlement Order.

### ii. Claim Three

The third claim in the Quiet Title Action seeks a declaratory judgment determining the amount that would be required for Satellite to redeem the Property from the 2015 Deed of Trust. (ER at 1243–45.) Specifically, the Complaint seeks, "[i]n the Alternative to the First and Second Causes of Action, on the Third Claim for relief, a determination

of the current amount of valid indebtedness secured by the 2015 [Deed of Trust] that must be satisfied for Satellite Capital to redeem the Sawtelle Property." (*Id.* at 1244–45.) The Bankruptcy Court's dismissal of the third cause of action did not rely on the Modification Order or any other orders issued in the bankruptcy proceedings. Instead, based on the transcript, the Bankruptcy Court determined that the claim was moot and/or that Satellite failed to satisfy certain procedural requirements. (*See id.* at 207–16.) This Court affirms.

The third cause of action alleges that Emaciation "refused to provide Satellite Capital with a payoff demand in November 2016." (*Id.* at 1243.) The procedures for such a demand are set out in California Civil Code § 2943(c), which generally requires a beneficiary to deliver a payoff demand statement within twenty-one days of receipt of a written demand. Cal. Civ. Code § 2943(c). "However, if the loan is subject to a recorded notice of default . . ., the beneficiary shall have no obligation to prepare and deliver this statement as prescribed unless the written demand is received prior to the first publication of a notice of sale." *Id.* Emaciation argues that this exception applies here. The Court agrees. As alleged in the Complaint, a notice of default was recorded against the Property on April 19, 2016, and a notice of sale was published and recorded on July 25, 2016. (ER at 1240.) Because the notice of default was recorded *before* Satellite allegedly made its written demand, Emaciation had no obligation to provide a statement. *See* Cal. Civ. Code § 2943(c). None of the cases cited by Satellite support its argument that it can state a claim for failure to provide a payoff demand statement despite these procedural deficiencies. (*See* App. Br. at 30 [citing *Crossroads Inv'rs, L.P. v. Fed. Nat'l Mortg. Assn.*, 246 Cal. App. 4th 529, *cause transferred and opinion not citable*, 381 P.3d 234 (Cal. 2016)].)

The Complaint also alleges that in October 2016, "an entity with a preexisting relationship with Satellite" made an offer to pay Emaciation $8,400,000 to satisfy the

2015 Deed of Trust.  (ER at 1241.)  Based on this allegation, Satellite argues that Emaciation failed to honor its right to redemption as guaranteed by California Civil Code § 2924c.  As relevant here, "any [] person having a subordinate lien . . . may pay to the beneficiary [of a senior lien] . . . the entire amount due . . . and thereby cure the default theretofore existing."  Cal. Civ. Code § 2924c.  Tender to pay off a lien, even if it is not accepted, also triggers a right to redemption.  *See id.* §§ 2904–2905.  The Court agrees with the Bankruptcy Court's determination that Satellite fails to allege valid tender.  The Complaint alleges that the third-party entity made its offer "at the request of Satellite" but does not allege that this entity made the offer on Satellite's behalf or otherwise acted as Satellite's agent.  (ER at 1241.)  Based on the plain text of the statute and basic principles of agency, such an allegation fails to state a claim under Section 2924c.  *See* Cal. Civ. Code § 2924c; *see also id.* §§ 2295–2300 (defining agency relationships).

Finally, Satellite argues that it remains entitled to declaratory relief to clarify the amount required to redeem the 2015 Deed of Trust.  The Court disagrees.  To the extent that the third cause of action *only* seeks declaratory relief, it was rendered moot by sale to a bona fide purchaser.  As explained in a previous order, the Court could still provide effective relief *if* Satellite is able to show that Emaciation's foreclosure sale was improper and wrongful.  (Dkt. 23 at 7.)  Because Satellite's third cause of action cannot support such a finding, it is rendered moot.  *See Anderson v. Heart Fed. Sav. & Loan Assn.*, 208 Cal. App. 3d 202, 210 (1989) (party seeking to set aside a foreclosure sale has burden of pleading improper procedure and consequent prejudice); *In re Thorpe Insulation Co.*, 677 F.3d 869, 880 (9th Cir. 2012) (mootness depends on appellate court's ability to grant effective relief).  The Court **AFFIRMS** the Bankruptcy Court's dismissal of the third cause of action.

//

//

### D.    Motion to Expunge *Lis Pendens* and Attorneys' Fees

Because the Court reverses the Dismissal Order in part and remands the Quiet Title Action to Bankruptcy Court, it lacks jurisdiction to consider Satellite's appeal of the Expungement Order and Attorneys' Fees Order.  California Civil Code § 405.39 provides that, in State court, an order expunging a *lis pendens* is only reviewable by petition for writ of mandate.  In the federal system, a bankruptcy court's order expunging *lis pendens* is neither a final order nor a collateral order and is therefore not ordinarily appealable.  *See In re Gonzalez*, 2012 WL 603747, at *4 (B.A.P. 9th Cir. Feb. 2, 2012).  A district court may nevertheless review an expungement order after the final resolution of the underlying adversary proceeding.  *See id.* (citing 28 U.S.C. § 158).  Because the Court reverses in part the Dismissal Order and remands to Bankruptcy Court, the Quiet Title Action is ongoing, and the Court lacks appellate jurisdiction to consider Satellite's appeal of interlocutory orders.  *Cf. id.*  Because an interim award of attorneys' fees is not a final order nor a collateral order, the same reasoning applies to Satellite's appeal of the Attorney Fees' Order.  *See In re Cont'l Coin Corp.*, 2014 WL 12614432, at *1 (C.D. Cal. Jan. 27, 2014) (citing *Hillery v. Rushen*, 702 F.2d 848, 848–49 (9th Cir. 1983)).  Indeed, Satellite's notice of appeal of the Attorneys' Fees Order expressly sought review based on the Court's authority to review the Dismissal Order.  (ER at 13.)  Satellite can challenge both orders in Bankruptcy Court in the first instance.

//
//
//
//
//
//
//

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's exercise of subject matter jurisdiction and **AFFIRMS** the Remand Order. The Court **AFFIRMS IN PART** and **REVERSES IN PART** the Bankruptcy Court's Dismissal Order. Specifically, it **AFFIRMS** the dismissal of the third cause of action and **REVERSES** the dismissal of the first and second cause of action. The Court **REMANDS** this case to the Bankruptcy Court for further proceedings consistent with this opinion and the opinion of the Bankruptcy Appellate Panel.

DATED:     October 23, 2019

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE